Layne Friedrich (Bar No. 195431)
    layne@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
    drev@lawyersforcleanwater.com
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

Michael Lozeau (Bar No. 142893)
    michael@lozeaudrury.com
LOZEAU | DRURY LLP
1516 Oak Street, #216
Alameda, CA 94501
Telephone: (510) 749-9102
Facsimile: (510) 749-9103

*Attorneys for Plaintiff*
California Sportfishing Protection Alliance

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>Plaintiff,<br><br>v.<br><br>COUNTY OF SACRAMENTO, a political subdivision of the State of California; SACRAMENTO AREA SEWER DISTRICT, a county sanitation district;<br><br>Defendants. | Civil Case No.:<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND CIVIL PENALTIES**<br><br>**(Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq*.)** |

California Sportfishing Protection Alliance, by and through its counsel, hereby alleges:

## I.     JURISDICTION AND VENUE

1.     This is a civil suit brought under the citizen suit enforcement provisions of the Federal Water Pollution Control Act, 33 U.S.C. sections 1251 *et seq*. (the "Clean Water Act" or the "CWA"). This Court has subject matter jurisdiction over the parties and subject matter of this action pursuant to 33 U.S.C. § 1365(a)(1) and 28 U.S.C. sections 1331 and 2201 (an action for declaratory and injunctive relief arising under the Constitution and laws of the United States).

2.     On December 29, 2010, California Sportfishing Protection Alliance ("CSPA") issued a 60-day notice letter ("Notice Letter") to the Sacramento Area Sewer District ("SASD") and the County of Sacramento ("County") regarding their violations of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), and of CSPA's intention to file suit against them for these violations. The Notice Letter is attached hereto as Attachment 1 and is incorporated herein by reference.

3.     The Notice Letter also specifically notified the County of its violations of (1) *Waste Discharge Requirements Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova, Sacramento, and County of Sacramento Storm Water Discharges from Municipal Separate Storm Sewer System Sacramento County (MS4),* NPDES Permit No. CAS082597, Order No. R5-2002-0206 California Regional Water Quality Control Board, Central Valley Region ("2002 MS4 Permit"), and (2) *Waste Discharge Requirements Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova, Sacramento, and County of Sacramento Storm Water Discharges from Municipal Separate Storm Sewer System Sacramento County (MS4),* NPDES Permit No. CAS082597, Order No. R5-2008-0142 California Regional Water Quality Control Board, Central Valley Region ("2008 MS4 Permit").

4.     Pursuant to 33 U.S.C. section 1365(b)(1)(A) of the Clean Water Act, CSPA also served the Notice Letter on the Administrator of the United States Environmental Protection Agency ("EPA"), the Administrator of EPA Region IX, the Executive Director of the State Water Resources Control Board ("State Board"), the Executive Officer of the Regional Water Quality Control Board, Central Valley Region ("Regional Board"), and the United States Attorney General.

5.     More than sixty days have passed since the Notice Letter was served on SASD, the County, and the State and Federal agencies.

6. CSPA is informed and believes, and thereon alleges, that neither the EPA nor the State of California has commenced or is diligently prosecuting an action to redress the violations alleged in this complaint.

7. Venue is proper in the Eastern District of California pursuant to section 505(c)(1) of the Clean Water Act, 33 U.S.C. §1365(c)(1), because the source of the violations is located within this judicial district.

## II. INTRADISTRICT ASSIGNMENT

8. Pursuant to Civil Local Rule 3-120(d), intradistrict assignment of this matter to the Sacramento Division of the Court is appropriate in that the events or omissions which give rise to CSPA's claims occurred in Sacramento County. In addition, many of CSPA's members reside in the County of Sacramento. No event or omission giving rise to CSPA's claims occurred in any other Division of this Court.

## III. PARTIES AND FACTUAL BACKGROUND

### A. California Sportfishing Protection Alliance

9. Plaintiff California Sportfishing Protection Alliance is a non-profit public benefit corporation organized under the laws of the State of California with its main office in Stockton, California. CSPA is dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including the waters impacted by SASD and the County's discharges. To further these goals, CSPA actively seeks federal, state, and local agency implementation of the Clean Water Act and other environmental regulations and statutes and, where necessary, directly initiates enforcement actions on behalf of itself and its members. CSPA has been and remains actively engaged in proceedings before the regional and state water boards relating to the issuance and compliance with the Clean Water Act and municipal storm water permits.

10. CSPA has approximately 2000 members who live, recreate and work in and around waters of the State of California, including rivers throughout the Central Valley and the Sacramento-San Joaquin River Delta ("Delta").

11. CSPA's members use and enjoy the waters in and around the areas served by the sewage collection system owned and/or operated by the SASD and/or the County ("Collection System") and the

County's municipal separate storm sewer system ("County MS4"). These waters include the Delta, the Sacramento River the American River, and tributaries to these waters. Each of these waters is a part of or tributary to the Delta.

12. CSPA's members use and enjoy the Delta, the Sacramento River, the American River and their local tributaries for recreational, scientific, aesthetic, educational, conservation and commercial purposes. Specifically, CSPA's members fish, boat, swim, picnic, hike and enjoy the wildlife in and around these waters.

13. CSPA's members' use and enjoyment of the local waterways in and around the area served by the Collection System and the County MS4 has been and continues to be adversely impacted by ongoing sanitary sewer overflows ("SSOs") from the Collection System, and by the County's discharges of storm water from the County MS4 contaminated with sewage and associated pollutants. The discharge of pollutants to surface waters has deleterious effects on those water bodies. Degradation of water quality and harm to aquatic life in any of the waters used by CSPA's members impairs their use and enjoyment of those waters.

14. The discharge of sewage, which contains human waste, household chemicals, industrial wastes, and other chemical wastes and biological materials, from the Collection System is a threat to human health, including the health of CSPA's members, and the environment.

15. Continuing commission of the acts and omissions alleged herein will irreparably harm CSPA's members.

16. The interests of CSPA's members have been, are being, and will continue to be adversely affected by SASD's and the County's failure to comply with the 2002 MS4 Permit, the 2008 MS4 Permit, and Clean Water Act.

17. The relief requested by this complaint will redress the harms to CSPA caused by SASD and the County's continuing failure to comply with the Clean Water Act.

18. CSPA has no other adequate remedy at law.

**B.   The Collection System**

19. The Collection System consists of approximately 4,363 miles of pipeline, including 2,965 miles of gravity sewer, 1,330 miles of lateral sewer, and 68 miles of force mains. The Collection

1  System includes 250,000 to 281,00 service connections.

2  20.  The Collection System collects and conveys sewage from residential, commercial, industrial, and agricultural sources.  Sewage from these sources includes without limitation human and animal waste, household chemicals, wastes from restaurants, wastes from hospitals, and wastes from industrial manufacturing and processing plants.

21.  The Collection System serves a population of more than one million people in the Sacramento region.

22.  The Collection System consists of pipes and other manmade conveyances.

23.  The Collection System collects and conveys sewage from within unincorporated areas of the County of Sacramento and the cities of Sacramento, Elk Grove, Rancho Cordova, Folsom and Citrus Heights to the sewage collection system owned and operated by the Sacramento Regional County Sanitation District ("SRCSD"), where it is subsequently delivered to the Sacramento Regional County Wastewater Treatment Plant ("WWTP").

24.  The Collection System runs through several major watersheds that drain to the Delta and its tributaries, including but not limited to the Sacramento River, American River, Arcade Creek, Cripple Creek, Morrison Creek, Florin Creek, Elder Creek, Laguna Creek, Linda Creek, Brooktree Creek, San Juan Creek, Verde Cruz Creek, Elk Grove Creek, Carmichael Creek, Chicken Ranch Slough, Strong Ranch Slough, and unnamed tributaries of these water bodies.

**C.  The Owners and Operators of the Collection System**

    **i.  The County of Sacramento**

25.  CSPA is informed and believes, and thereon alleges, that the County of Sacramento is an operator of the Collection System.

26.  The County of Sacramento is a political subdivision of the State of California.

27.  Under the Sacramento County Code, section 2.09.610, "there is established within County government a "Sanitation Districts Agency."

28.  The SASD and SRCSD appoint, and the Sacramento County Board of Supervisors confirms, a District Engineer. The District Engineer serves as the County Sanitation Districts Agency's "Agency Administrator." Sacramento County Code § 2.09.610.

Complaint                                                                                                                     5

29. The Agency Administrator is subject to removal by the County Executive. Sacramento County Code § 2.09.610.

30. The Agency Administrator manages and controls many aspects of the SASD operations. The Agency Administrator is responsible for, among other things, (1) performing duties authorized and directed by the SRCSD and SASD Boards of Directors, (2) overseeing the department with County staff assigned to SRCSD and SASD and acting as liaison to those districts' governing bodies, (3) making recommendations to the SRCSD and SASD Boards of Directors and the County Executive respecting sanitary sewer services and infrastructure. *See* Sacramento County Code § 2.09.610.

31. Staff for the operations of SASD is provided by the County through the Department of Water Quality. Sac. County Code § 2.165.030(a).

32. There are several departments within the County Sanitation Districts Agency. One of these departments is the SASD Operations department.

33. The SASD Operations department is responsible for, among other things, (1) performing duties authorized and directed by the SASD Board of Directors, (2) processing all technical matters related to SASD, (3) making recommendations regarding the awarding of contracts for the construction, repair, and maintenance of all facilities under the department supervision, (4) representing the County and SASD in dealing with other agencies, organizations, groups, and individuals, and (5) advising and assisting other county departments and agencies with respect to the sewer district. *See* Sacramento County Code § 2.09.630.

### ii. Sacramento Area Sewer District

34. CSPA is informed and believes, and thereon alleges, that SASD is an owner and/or operator of the Collection System.

35. The SASD is a county sanitation district organized under the California Health and Safety Code that serves the unincorporated areas of the Sacramento County and the cities of Sacramento, Elk Grove, Rancho Cordova, Folsom and Citrus Heights.

36. SASD owns thousands of miles of lower laterals and sewer mainline pipes that make up the Collection System.

37. SASD is responsible for the operation and maintenance of the Collection System. These

responsibilities include responding to citizen complaints of SSOs, conducting routine maintenance, cleaning, and inspection of the Collection System, and repairing and replacing the Collection System.

### D. Sanitary Sewer Overflows from the Collection System

38. Since December 29, 2005, the County and SASD have had more than 6,000 SSOs from the Collection System, which is equivalent to approximately 28 SSOs per 100 miles of sewer pipes per year. *See* Notice Letter, Exhibit A. These SSOs are documented in spill reports submitted to the California Office of Emergency Services, to the State Board and to the Regional Board, in internal recordkeeping documents prepared by the SASD and County personnel, and in other correspondence or documents prepared by SASD and/or the County indicating SSOs from the Collection System.

39. These reported SSOs have spilled directly to area surface waters, to the streets, curbs, gutters and other paved surfaces that comprise the municipal separate storm sewer system in the urbanized area of Sacramento County ("Sacramento Urbanized Area MS4"), to unpaved areas, and into homes and businesses served by the Collection System.

40. The Sacramento Urbanized Area MS4 is a conveyance or system of conveyances designed or used for collecting and conveying storm water. It and its components are point sources under the Clean Water Act. The Sacramento Urbanized Area MS4 includes the portion of the MS4 owned and operated by the County of Sacramento (*see* Section VI(E)-(F) below).

41. CSPA is informed and believes, and thereon alleges, that once raw sewage and its associated pollutants are discharged to the Sacramento Urbanized Area MS4, they will be subsequently discharged to waters of the United States.

42. CSPA is informed and believes, and thereon alleges, that of the over 6,000 SSOs, at least 1,770 discharged to waters of the United States, either directly or through the Sacramento Urbanized Area MS4.

43. CSPA is informed and believes, and thereon alleges, that SASD and/or the County has failed to adequately operate, maintain, repair, rehabilitate, and/or replace the Collection System, thus resulting in SSOs.

44. CSPA is informed and believes, and thereon alleges, that many of the SSOs from the Collection System are dry weather spills caused by fats, oil and grease in sewer lines, or blockages of

the sewer lines by roots, rocks, and/or debris.

45. CSPA is informed and believes, and thereon alleges, that many of the SSOs from the Collection System are capacity-related spills caused by the Collection System's inadequate capacity to handle peak wet-weather flows. Flows through the Collection System increase considerably during wet weather due to the infiltration and inflow of rainwater into sewer pipes, which overwhelms the capacity of the Collection System and causes SSOs.

46. CSPA is informed and believes, and thereon alleges, that many of the SSOs from the Collection System occur during wet weather when the blockages and other problems within the Collection System combine with increase flows due to wet weather to cause an overflow from the Collection System.

47. CSPA is informed and believes, and thereon alleges, that SSOs from the Collection System are also caused by the deterioration of sewage infrastructure, and the under-funding and deferral of repairs, rehabilitation, and replacement of infrastructure.

**E.     The County MS4**

48. An MS4 is a system of conveyances that includes but is not limited to streets, curbs, gutters, other paved surfaces, catch basins, ditches, man-made channels, catch basins and/or storm drains owned or operated by a State, city, or town that is designed or used for collecting or conveying storm water and that discharges to waters of the United States. *See* 40 C.F.R. 122.26(b)(8)(i)-(ii); *see also* 40 C.F.R. § 122.26(b)(18).

49. The County MS4 is a part of the Sacramento Urbanized Area MS4.

50. The County MS4 collects and conveys storm water and non-storm water in areas also served by the Collection System.

51. The County MS4 contains numerous streets, curbs, gutters, sidewalks, other paved surfaces, and/or storm drain inlets that lead to storm drain pipes and other conveyances, which discharge to the Sacramento River, the American River, and/or their local tributaries.

52. CSPA is informed and believes, and thereon alleges, that pollutants in SSOs and other materials that reach the County MS4 discharge to local waterways.

### F. The Owner and Operator of the MS4

53. The Sacramento Urbanized Area MS4 is owned and/or operated by the entities permitted by the 2008 MS4 Permit.

54. The County owns and/or operates an MS4 in the unincorporated areas of Sacramento County.

55. The County is a permittee on both the 2002 MS4 Permit and 2008 MS4 Permit.

56. The County was required to comply with all provisions of the 2002 MS4 Permit through September 10, 2008, and was and still is required to comply with all provisions of the 2008 MS4 Permit since September 11, 2008. 2002 MS4 Permit, Provisions, C.1.a; 2008 MS4 Permit, Provisions, D.1.a.

57. Pursuant to the 2002 MS4 Permit and 2008 MS4 Permit, the County has had and continues to have jurisdiction over and/or operation and maintenance responsibilities for the County MS4. *See* 2002 MS4 Permit, Provisions, C.4.a.; 2008 MS4 Permit, Provisions, D.4.a.

58. The County's Department of Water Resources is charged with the operation and maintenance of the MS4.

### G. Discharges of Sewage and Associated Pollutants into the County MS4

59. CSPA is informed and believes, and thereon alleges, that hundreds of SSOs from the Collection System discharged into the County MS4. SSOs that enter the County MS4 are not storm water. In numerous instances throughout the MS4, sewage spills from the Collection System occur upgradient of the MS4. The MS4, including the storm drains and accompanying pipes and channels, are designed to convey any storm water or sewage effluent that enters the drains to area receiving waters. The County has not implemented any operational and/or design features that effectively prohibits SSOs from reaching storm drains. The County and SASD have failed to eliminate SSOs from the Collection System that would effectively prohibit SSOs from reaching the MS4.

### H. Discharges of Storm Water from the County MS4 Contaminated with Pollutants Associated with Sanitary Sewer Overflows

60. CSPA is informed and believes, and thereon alleges, that sampling performed by the County pursuant to its obligations under the 2002 MS4 Permit and the 2008 MS4 Permit indicates that its discharges of storm water from the County MS4 contain pollutants associated with SSOs. Analytical

Complaint                                                                                              9

results from samples of storm water discharges from the County MS4 are contained in annual reports submitted by the County to the Regional Board pursuant to the monitoring and reporting obligations imposed by the 2002 MS4 Permit and the 2008 MS4 Permit, and in the 2007 Report of Waste Discharge also submitted to the Regional Board by the County. Each of these reported samples of storm water discharges contained pollutants associated with SSOs.

61.   CSPA is informed and believes, and thereon alleges, that the County has not developed and/or implemented operational and management practices to reduce to the maximum extent practicable the presence of pollutants associated with SSOs found in its discharges of storm water from the County MS4.

**I.    The Waters that Receive the Illegal Discharges Alleged in this Letter and Environmental Impacts of those Discharges**

62.   CSPA is informed and believes, and thereon alleges, that the Delta, and the Sacramento River and American Rivers, and their tributaries, including but not limited to Arcade Creek, Cripple Creek, Morrison Creek, Florin Creek, Elder Creek, Laguna Creek, Linda Creek, Brooktree Creek, San Juan Creek, Verde Cruz Creek, Elk Grove Creek, Carmichael Creek, Chicken Ranch Slough, Strong Ranch Slough, and unnamed tributaries to these waters, are waters of the United States and/or have a significant nexus to waters of the United States, and are thus navigable waters as defined by the Clean Water Act and controlling legal authority.

63.   The Delta is navigable.

64.   The Sacramento River is navigable.

65.   The American River is navigable.

66.   Arcade Creek flows from northeast Sacramento County, through unincorporated areas of the County, into the City of Sacramento. It joins the Natomas East Main Canal and flows from there to the American River. Historically, Arcade Creek flowed into Bush Lake, which emptied into the American River.

67.   Cripple Creek is a major tributary of Arcade Creek. Its flows join those of Arcade Creek upstream of Garfield Avenue.

68.   Linda Creek is tributary to Cripple Creek, Arcade Creek, and the American River.  Linda

Complaint                                                                                                                                    10

Creek's flows join Cripple Creek's upstream of Sunrise Boulevard.

69. Brooktree Creek is tributary to Arcade Creek and the American River. It joins with Arcade Creek downstream of Arcade Creek's confluence with Cripple Creek.

70. San Juan Creek is tributary to Arcade Creek and the American River. It joins with Arcade Creek downstream of Arcade Creek's confluence with Brooktree Creek.

71. Verde Cruz Creek is tributary to Arcade Creek and the American River. It joins with Arcade Creek upstream of Arcade Creek's confluence with Cripple Creek.

72. Morrison Creek flows through central Sacramento County from the east to the West toward the Sacramento River. Historically, Morrison Creek flowed to the Sacramento River. Currently, Morrison Creek flows to Stone Lake, where it joins a network of sloughs that connect the Sacramento River and the Delta.

73. Florin Creek is a tributary of Morrison Creek and the sloughs that connect the Sacramento River and the Delta.

74. Elder Creek is a tributary of Florin Creek and Morrison Creek. Elder Creek and Florin Creek join approximately one-half mile from their confluence with Morrison Creek.

75. Laguna Creek flows parallel to Morrison Creek through central Sacramento County. Laguna Creek flows through Elk Grove, afterwhich it joins Morrison Creek upstream of Stone Lake.

76. Elk Grove Creek is tributary to Laguna Creek, which it joins upstream of the confluence of Laguna Creek and Morrison Creek.

77. Carmichael Creek is a tributary of the American River.

78. Chicken Ranch Slough is tributary to the American River.

79. Strong Ranch Slough is tributary to the American River.

80. The Delta is the largest Pacific Coast estuary in both North and South America. The Delta is the confluence of five major rivers and numerous creeks and sloughs. This maze of finger-like waterways ebbs and flows through prime California natural habitat and farmland. The Delta is also the primary source of fresh water supply for two-thirds of California's residents. The preservation of this natural resource is essential. The Delta and its tributaries also provide special aesthetic and recreational significance for people living in the surrounding communities. With 700 miles of channels, nearly all

navigable, recreation in the Delta is mainly water-oriented. Major recreational activities supported by the Delta include as fishing, water-skiing, sailing, cruising, personal watercraft, canoeing, kayaking, swimming, and windsurfing. These activities depend upon water quality and habitat preservation in the Delta. The growing urbanization of the Delta area makes these recreational and aesthetic uses even more important to the quality of life of Delta residents. Furthermore, the Delta fosters the commercial fishing industry in California and beyond. Commercial fishers and sport fishers alike continue to suffer from the constant degradation of the Delta through illegal discharges, including SSOs. The Delta's once-abundant and varied fisheries and species habitat have been drastically diminished by pollution.

81. Spills of raw sewage and discharges of sewage-contaminated storm water harm the Delta and its tributaries, and pose a serious risk to fisheries, wildlife habitat, and human health, including the health of CSPA's members.

82. In addition to human waste and bacteria, sewage contains metals and chemicals that cause cancer or reproductive toxicity. These metals and chemicals come from solvents, detergents, cleansers, inks, pesticides, paints, pharmaceuticals, and other chemicals used by households and businesses and then discarded to sewage collection systems. High concentrations of these pollutants are typically found in discharges of raw sewage.

83. The intensive use of the Delta, the Sacramento River, and the American River for commercial, sport fishing, and water-contact recreation increases the likelihood that people, including members of CSPA, will come into direct contact with spilled sewage and the pollutants it contains.

84. Sewage pollution also affects CSPA members and other people who eat fish caught in the Delta, the Sacramento River, and the American River. Some toxic chemicals are concentrated in the area water bodies' food web as the concentrations of contaminants absorbed by organisms low on the food chain become magnified in fish and birds farther up the food chain.

85. Many of the water bodies identified in this complaint are listed on the State of California's 2006 and 2010 Clean Water Act Section 303(d) list of impaired water bodies ("303(d) Lists"). An impaired water body cannot support the designated beneficial uses for that water body. The designated uses of the water bodies receiving the County's and SASD's discharges include, but are not limited to, municipal and domestic use, warm and cold freshwater habitat, and warm and cold fish

migration. *See* Water Quality Control Plan ("Basin Plan") for the Sacramento River and San Joaquin River Basins, California Regional Water Quality Control Board, Central Valley Region (September 2009), Table II-1.

86. The Sacramento and American Rivers are listed on the 303(d) Lists as impaired for mercury and unknown toxicity. Arcade Creek is listed on the 303(d) Lists as impaired for copper.

87. The Delta is listed on the 303(d) Lists as impaired for chlordane, dichlorodiphenyltrichloroethane ("DDT"), dieldrin, dioxin compounds, exotic species, furan compounds, mercury, nickel, polychlorinated biphenyls ("PCBs"), and selenium.

88. A number of the pollutants impairing the waters that receive discharges from SASD and the County are found in SASD's and the County's discharges of raw sewage from the Collection System, as well as in the County's storm water discharges from the County MS4. By discharging the pollutants that contribute to the continued impairment of the Delta and its tributaries, the County's and SASD's discharges and resulting violations of the Clean Water Act have directly harmed and continue to directly harm CSPA's members' use and enjoyment of these waters.

89. SSOs that do not directly reach the Delta still pose significant health risks to CSPA's members and others by depositing raw sewage in public streets, public buildings and grounds, and private yards and homes. SSOs contain large quantities of bacteria, viruses, mold spores, and protozoa. Exposure to raw or partially treated sewage can cause a variety of health problems, including gastroenteritis, respiratory illness, ear, nose, and throat problems, and skin rashes. Mold spores can establish an ecological niche when they are carried onto a homeowner's property during a sanitary sewer overflow, creating an ongoing health risk from chronic exposure. Sewage contaminated waters also may provide a breeding ground for mosquitoes. Residential sewage overflows also diminish property values and impose severe nuisance on local residents.

## IV. LEGAL BACKGROUND

### A. The Clean Water Act

90. Section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), prohibits the discharge of any pollutant into waters of the United States unless the discharge is authorized by and in compliance with the terms of a National Pollutant Discharge Elimination System ("NPDES") permit issued pursuant

1  to section 402 of the Clean Water Act, 33 U.S.C. § 1342.

2  91.  Section 402 of the Clean Water Act, 33 U.S.C. § 1342, provides the federal framework for regulating the discharge of pollutants to waters of the United States. *See* 33 U.S.C. § 1342.

92.  Section 402(p)(2) of the Clean Water Act, 33 U.S.C. § 1342(p), requires dischargers of municipal storm water to obtain and comply with an NPDES permit. 33 U.S.C. § 1342(p)(2).

93.  Section 505(a) of the Clean Water Act provides for citizen enforcement actions against any "person," including individuals acting in their official capacity, for violations of (1) any effluent standard or limitation or (2) an order issued by the Administrator or a State with respect to such a standard or limitation. 33 U.S.C. §§ 1365(a), 1365(f), and 1362(5).

94.  Under the Clean Water Act, owners and operators of any facility or activity are liable for violations of the Clean Water Act. *See* 33 U.S.C. § 1311(a); 40 C.F.R. § 122.2.

95.  Section 505(a)(1) and section 505(f) of the Clean Water Act provides for citizen enforcement to address discharges of pollutants to waters of the United States without an NPDES Permit. 33 U.S.C. §§ 1365(a)(1), 1365(f).

96.  Sections 505(a)(1) and 505(f) of the Clean Water Act provides for citizen enforcement for violations of NPDES permits such as the 2002 MS4 Permit and the 2008 MS4 Permit. 33 U.S.C. §§ 1365(a)(1), 1365(f).

97.  An action for injunctive relief under the Clean Water Act is authorized by section 505(a), 33 U.S.C. § 1365(a). Violators of the Clean Water Act are also subject to an assessment of civil penalties of up to $32,500 per day per violation of the Clean Water Act for violations of the Clean Water Act occurring after March 15, 2004 and $37,500 for all violations occurring on or after January 12, 2009. 33 U.S.C. §§ 1365(a) and 1319(d); 40 C.F.R. §§ 19.1–19.4 (2010).

98.  The Clean Water Act authorizes the award of reasonable attorneys' fees and costs. 33 U.S.C. § 1365(d).

**B. The Requirements of the MS4 Permit**

99.  Discharges into and from the County MS4 were regulated by the 2002 MS4 Permit until September 10, 2008, when it was reissued as the 2008 MS4 Permit. Discharges into and from the MS4 are currently regulated by the 2008 MS4 Permit.

Complaint                                                                                                                          14

100. Any violation of the 2008 MS4 Permit's or the 2002 MS4 Permit's requirements is a violation of the Clean Water Act. *See* 33 U.S.C. § 1365(f).

101. The 2008 MS4 Permit and the 2002 MS4 Permit contain prohibitions on discharges to the County's MS4. For example, the 2008 MS4 Permit and the 2002 MS4 Permit require the County to effectively prohibit non-storm water discharges to the County's MS4. 2002 MS4 Permit, Discharge Prohibition, A.4; 2008 MS4 Permit, Discharge Prohibition, B.1.

102. The 2008 MS4 Permit and the 2002 MS4 Permit prohibit discharges of storm water from the County's MS4 that contain pollutants not reduced to the maximum extent practicable. 2008 MS4 Permit, Discharge Prohibitions A.3; 2002 MS4 Permit, Discharge Prohibitions A.3.

## V.  CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION

**Unpermitted Discharges of Pollutants to Waters of the United States in Violation of the Clean Water Act, 33 U.S.C. §§ 1311(a), 1365(a), 1365(f)**

103. CSPA realleges, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

104. The County is an operator of the Collection System.

105. The SASD is an owner and operator of the Collection System.

106. CSPA is informed and believes, and thereon alleges, that SASD and/or the County has been discharging and continues to discharge SSOs from the Collection System directly to waters of the United States, and/or into the Sacramento Urbanized Area MS4 then to waters of the United States, on at least 1,770 separate occasions since December 29, 2005. The date and location of these SSOs are identified in Exhibit B to the Notice Letter.

107. CSPA is informed and believes, and thereon alleges, that additional SSOs will occur during or will be discovered through this enforcement action. Each additional SSO that discharges to waters of the United States, whether directly or through the Sacramento Urbanized Area MS4, will be included in this action and is a separate Clean Water Act violation.

108. CSPA is informed and believes, and thereon alleges, that the waters into which SASD and the County discharges SSOs are waters of the United States.

109. CSPA is informed and believes, and thereon alleges, that neither the SASD nor the County has an NPDES Permit that authorizes point source discharges of SSOs to waters of the United States.

110. Each SSO from the Collection System to waters of the United States and/or into the Sacramento Urbanized Area MS4 then to waters of the United States without an NPDES permit is a separate and distinct violation of the Clean Water Act. 33 U.S.C. § 1311(a).

111. These discharges and violations are ongoing and it is likely that SASD and/or the County will continue to violate these requirements without Court intervention.

112. By committing the acts and omissions alleged above, SASD and/or the County are subject to an assessment of civil penalties pursuant to Clean Water Act sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

113. An action for declaratory judgment is authorized by 28 U.S.C. § 2201.

114. An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. section 1365(a) and (f). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

115. WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION

**Failure to Effectively Prohibit Discharges of Non-Storm Water to the County MS4 in Violation of the 2002 and 2008 MS4 Permits and the Clean Water Act**

116. Plaintiff realleges, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

117. The County is an owner and operator of the County MS4.

118. CSPA is informed and believes, and thereon alleges, that the County has failed to effectively prohibit the discharge of non-storm water in the form of SSOs to the County MS4.

119. Information currently available to CSPA indicates that there have been discharges of non-storm water in the form of SSOs to the County's MS4 on 1,747 occasions since December 29, 2005. The dates and locations of these discharges of non-storm water in the form of SSOs to the County MS4 are

Complaint                                                                                                                         16

set forth in Exhibit C to the Notice Letter.

120.   CSPA is informed and believes, and thereon alleges, that additional SSOs to the County MS4 will occur during or will be discovered through this enforcement action. Each additional SSO that enters the County MS4 will be included in this action.

121.   This high number of SSOs that have discharged to the County MS4 indicates that the County has failed to effectively prohibit the discharge of non-storm water in the form of SSOs.

122.   Since December 29, 2005 the County has been liable each day that it failed to effectively prohibit SSOs to the County MS4, and these violations continue each day the County fails to effectively prohibit SSOs from entering the County MS4.

123.   At a minimum, the County has failed to effectively prohibit the discharge of non-storm water to the County MS4 on each and every occasion that non-storm water in the form of SSOs discharged to the County MS4.

124.   Each day from December 29, 2005 and September 10, 2008 that the County failed to effectively prohibit discharges of non-storm water in the form of SSOs to the County MS4 is a separate and distinct violation of Discharge Prohibition A.4 of the 2002 MS4 Permit and the Clean Water Act. *See* 33 U.S.C. § 1311(a).

125.   Each day since September 11, 2008 that the County failed and continues to fail to effectively prohibit discharges of non-storm water in the form of SSOs to the County MS4 is a separate and distinct violation of Discharge Prohibition B.3 of the 2008 MS4 Permit and the Clean Water Act. *See* 33 U.S.C. § 1311(a).

126.   The County's failure to effectively prohibit the discharge of non-storm water in the form of SSOs to the County MS4 is ongoing and it is likely that the County will continue to violate these requirements of the 2008 MS4 Permit without Court intervention.

127.   By committing the acts and omissions alleged above, the County is subject to an assessment of civil penalties pursuant to Clean Water Act sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

128.   An action for declaratory judgment is authorized by 28 U.S.C. § 2201.

129.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C.

section 1365(a) and (f). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

130. WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION

**Discharges of Pollutants from the County MS4
in Violation of Permit Conditions Established by the MS4 Permit and the Clean Water Act**

131. Plaintiff realleges, as if set forth fully herein, each and every allegation contained in the preceding paragraphs.

132. CSPA is informed and believes, and thereon alleges, that the County has discharged and continues to discharge storm water contaminated with pollutants associated with SSOs not reduced to the maximum extent practicable from the County MS4.

133. The County's continued failure to prevent SSOs from reaching the County MS4, and from discharging from the County MS4, results in a failure to meet its obligation to reduce the discharge of these pollutants from the County MS4 to the maximum extent practicable.

134. Analytical results of samples of storm water discharges from the County MS4, as reported by the County to the Regional Board, indicate that the storm water discharged on the dates that the sample was taken contained pollutants associated with SSOs. Each of these occasions that occurred prior to September 11, 2008 is a violation of Discharge Prohibition A.3 of the 2002 MS4 Permit. Each of these occasions that occurred on or after September 11, 2008 is a violation of Discharge Prohibition A.3 of the 2008 MS4 Permit.

135. CSPA is informed and believes, and thereon alleges, that additional discharges of pollutants associated with SSOs that are not reduced to the maximum extent practicable from the County MS4 will occur during or will be discovered through this enforcement action. Each additional discharge of pollutants associated with SSOs that are not reduced to the maximum extent practicable from the County MS4 will be included in this action.

136. Each day between December 29, 2005 and September 10, 2008 that the County discharged pollutants associated with SSOs not reduced to the maximum extent practicable from the

County MS4 is a separate and distinct violation of Discharge Prohibition A.3 of the 2002 MS4 Permit and the Clean Water Act.  *See* 33 U.S.C. § 1311(a).

137.   Each day since September 11, 2008 that the County discharged pollutants associated with SSOs not reduced to the maximum extent practicable from the County MS4 is a separate and distinct violation of Discharge Prohibition A.3 of the 2008 MS4 Permit and the Clean Water Act.  *See* 33 U.S.C. § 1311(a).

138.   These discharges and violations are ongoing and it is likely that the County will continue to violate Discharge Prohibition A.3 of the MS4 Permit and the Clean Water Act without Court intervention.

139.   CSPA is informed and believes, and thereon alleges, that additional discharges of pollutants not reduced to the maximum extent practicable from the County MS4 will occur during or will be discovered through this enforcement action. Each additional discharges of pollutants not reduced to the maximum extent practicable from the County MS4 will be a separate violation of the 2008 MS4 Permit and the Clean Water Act.

140.   By committing the acts and omissions alleged above, the County is subject to an assessment of civil penalties pursuant to Clean Water Act sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a).

141.   An action for declaratory judgment is authorized by 28 U.S.C. § 2201.

142.   An action for injunctive relief under the Clean Water Act is authorized by 33 U.S.C. section 1365(a) and (f). Continuing commission of the acts and omissions alleged above will irreparably harm Plaintiff and the citizens of the State of California, for which harm they have no other plain, speedy, or adequate remedy at law.

143.   WHEREFORE, Plaintiff prays for relief as hereinafter set forth.

## VI.   RELIEF REQUESTED

144.   CSPA respectfully requests that this Court grant the following relief:

   a.   Issue a Court order declaring SASD and the County to have violated and to be in violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a) for their unpermitted discharge of pollutants to waters of the Untied States;

Complaint     19

b.  Issue a Court order enjoining SASD and the County from discharging pollutants to waters of the United States without an NPDES permit in violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a);

c.  Issue a Court order declaring the County to have violated Discharge Prohibition A.4 of 2002 MS4 Permit, to have violated and be in violation of Discharge Prohibition B.1 of the 2008 MS4 Permit, and thus to have violated and be in violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), for its failure to effectively prohibit the discharge of non-storm water into the Sacramento County MS4;

d.  Issue a Court order declaring the County to have violated Discharge Prohibition A.3 of 2002 MS4 Permit, to have violated and be in violation of Discharge Prohibition A.3 of the 2008 MS4 Permit, and thus to have violated and be in violation of section 301(a) of the Clean Water Act, 33 U.S.C. § 1311(a), by discharging pollutants associated with SSOs from the MS4 that have not been reduced to the maximum extent practicable;

e.  Issue a Court order enjoining the County from violating the substantive and procedural requirements of the 2008 MS4 Permit and the Clean Water Act, including specifically a Court order enjoining the County from violating the specific terms, conditions, and provisions of the 2008 MS4 Permit and the Clean Water Act identified in this complaint;

f.  Issue a Court order pursuant to sections 309(d) and 505(a), 33 U.S.C. §§ 1319(d) and 1365(a), assessing civil penalties against SASD and/or the County of up to $32,500 per day per violation of the Clean Water Act for all violations occurring on or after March 15, 2004 and $37,500 per day per violation of the Clean Water Act for all violations occurring on or after January 12, 2009;

g.  Award Plaintiff its costs and fees for bringing suit for the City's violations of the Clean Water Act as provided for under by sections 309(d) and 505(a) of the Clean Water Act, 33 U.S.C. §§ 1319(d) and 1365(a);

h.  Grant any such other relief as the Court deems appropriate.

LAWYERS FOR CLEAN WATER, INC.

Dated: March 1, 2011

_____
Layne Friedrich
Drevet Hunt

Complaint                                                                                                  20