Layne Friedrich (Bar No. 195431)
  layne@lawyersforcleanwater.com
Drevet Hunt (Bar No. 240487)
  drev@lawyersforcleanwater.com
LAWYERS FOR CLEAN WATER, INC.
1004-A O'Reilly Avenue
San Francisco, California 94129
Telephone: (415) 440-6520
Facsimile: (415) 440-4155

Michael Lozeau (Bar No. 142893)
  michael@lozeaudrury.com
LOZEAU | DRURY LLP
1516 Oak Street, #216
Alameda, CA 94501
Telephone: (510) 749-9102
Facsimile: (510) 749-9103

*Attorneys for Plaintiff*
California Sportfishing Protection Alliance

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CALIFORNIA SPORTFISHING PROTECTION ALLIANCE, a non-profit corporation,<br><br>       Plaintiff,<br><br>   v.<br><br>COUNTY OF SACRAMENTO, a political subdivision of the State of California; SACRAMENTO AREA SEWER DISTRICT, a county sanitation district;<br><br>       Defendants. | Civil Case No.: CV 11-00575-KJM-EFB<br><br>**CONSENT DECREE** |

**CONSENT DECREE**

The following Consent Decree is entered into by and between Plaintiff California Sportfishing Protection Alliance ("Plaintiff" or "CSPA"), and defendants County of Sacramento ("County") and Sacramento Area Sewer District ("SASD") (collectively "Defendants").  The entities entering into this Consent Decree are each an individual "Settling Party" and collectively "Settling Parties."

**WHEREAS**, CSPA is a non-profit public benefit corporation dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including the Sacramento River, the American River, and the Sacramento-San Joaquin River Delta;

**WHEREAS**, the County is a political subdivision of the State of California and is the permittee on the *Waste Discharge Requirements Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova, Sacramento, and County of Sacramento Storm Water Discharges from Municipal Separate Storm Sewer System Sacramento County (MS4),* NPDES Permit No. CAS082597, Order No. R5-2002-0206 California Regional Water Quality Control Board Central Valley Region ("2002 MS4 Permit"), and (2) *Waste Discharge Requirements Cities of Citrus Heights, Elk Grove, Folsom, Galt, Rancho Cordova, Sacramento, and County of Sacramento Storm Water Discharges from Municipal Separate Storm Sewer System Sacramento County (MS4),* NPDES Permit No. CAS082597, Order No. R5-2008-0142 California Regional Water Quality Control Board Central Valley Region ("2008 MS4 Permit");

**WHEREAS**, SASD is a County Sanitation District pursuant to and operating under the County Sanitation District Act;

**WHEREAS**, on December 29, 2010, CSPA provided the Defendants, the Administrator of the United States Environmental Protection Agency ("EPA"), the Regional Administrator for Region IX of the EPA, the Executive Director of the California State Water Resources Control Board ("State Board"), and the Executive Officer of the California Regional Water Quality Control Board, Central Valley Region ("Regional Board") with a Notice of Violation and Intent to File Suit ("Notice Letter") under section 505(a) of the Federal Water Pollution Control Act ("Clean Water Act" or "CWA"), 33 U.S.C. § 1365(a).  The Notice Letter alleged that Defendants violated and continue to

violate the Clean Water Act for discharges of pollutants in violation of the Clean Water Act, the 2002 MS4 Permit, and/or the 2008 MS4 Permit;

**WHEREAS**, on March 1, 2011, Plaintiff filed its complaint in the United States District Court for the Eastern District of California ("District Court") against Defendants, Case No. CV-11-00575-KJM-EFB (hereinafter "Complaint");

**WHEREAS**, Defendants deny CSPA's allegations that they have violated the Clean Water Act and/or any of the permits as alleged in the Complaint;

**WHEREAS**, the Settling Parties, through their authorized representatives and without either adjudication of the Complaint's claims or admission by Defendants of any alleged violation or other wrongdoing, have chosen to resolve this action through settlement and avoid the costs and uncertainties of further litigation;

**NOW, THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties each hereby agree as follows:

## I.  GENERAL OBJECTIVES

1.  The objectives of this Consent Decree are:

    a.  To ensure that Defendants use, implement, and improve ways, means, and methods to prevent sanitary sewer overflows;

    b.  To ensure that Defendants use, implement, and improve ways, means, and methods to prevent violations of, or comply with, applicable permits, laws, and regulations as related to sanitary sewer overflows.

## II.  DEFINITIONS

2.  Unless otherwise expressly defined herein, terms used in this Consent Decree, which are defined in the CWA, Porter-Cologne, or in regulations implementing these statutes, have the meaning assigned to them in the applicable statutes, regulations, or rules.  Whenever terms listed below are used in this Consent Decree, the following definitions apply:

    a.  "CCTV" means closed-circuit television or other comparable technologies such as technology combining video with sonar data that delineates the cross section of the pipe, or utilizing a robot that takes many pictures as it travels down the pipe and then stitches the pictures

1  together to create a frame by frame video.

2          b.     "County" means the County of Sacramento, California.

3          c.     "SASD" means the Sacramento Area Sewer District.

4          d.     "Condition Assessment" means an inspection of a Sewer Segment by CCTV

5  that results in documentation of the structural condition of the inspected Sewer Segment.

6          e.     "CSPA" means California Sportfishing Protection Alliance.

7          f.     "Day" means a calendar day.  In computing any period of time under this

8  Consent Decree, where the last day of such period is a Saturday, Sunday, or Federal or State Holiday,

9  or furlough day that results in the closure of SASD offices, the period runs until the close of business

10  on the next day that is not a Saturday, Sunday, or Federal or State Holiday, or furlough day.

11          g.     "FOG" means fats, oils, and grease.

12          h.     "Lower Lateral" means the lateral line owned and/or operated by the

13  Defendants connecting a home or other structure to the Defendants sewer main extending from the

14  sewer main to the back of the public right-of-way or Defendants' clean out, whichever is applicable

15  to the lateral connection.  Lower Laterals are generally connected to Private Laterals.

16          i.     "MS4" means the municipal separate storm sewer system owned or operated

17  by the County of Sacramento or any other permittee on the 2008 MS4 Permit.  The MS4 includes the

18  entire "municipal separate storm sewer" as that term is defined in 40 C.F.R. § 122.26(b)(8).

19          j.     "County MS4" means the municipal separate storm sewer system owned or

20  operated by the County of Sacramento, and includes the entire municipal separate storm sewer

21  system under the County's jurisdiction that meets the definition set forth in 40 C.F.R. § 122.26(b)(8).

22          k.     "NPDES" means National Pollutant Discharge Elimination System.

23          l.     "Private Lateral" means the private sanitary sewer lateral or line connecting a

24  home or other structure to the Lower Lateral, generally extending from the outside of the foundation

25  of the structure to the public right-of-way or the Defendants' cleanout, whichever is applicable.

26          m.     "Sanitary Sewer Overflow" or "SSO" means: "any overflow, spill, release,

27  discharge or diversion of untreated or partially treated wastewater from the the Collection System.

28  SSOs include:  (i) Overflows or releases of untreated or partially treated wastewater that reach waters

of the United States; (ii) Overflows or releases of untreated or partially treated wastewater that do not reach waters of the United States; and (iii) Wastewater backups into buildings and on private property that are caused by blockages or flow conditions within the publicly owned portion of a sanitary sewer system."  For purposes of this definition, "waters of the United States" has the meaning as set forth in 40 C.F.R. § 122.2.  Temporary storage and conveyance facilities (such as vaults, temporary piping, wet wells, construction trenches, impoundments, tanks, etc.) are considered to be part of the sanitary sewer system, and discharges and/or diversions into these temporary storage facilities that do not discharge to waters of the United States are not considered to be SSOs.

n.    "Sewer Segment" means any section of publicly owned sewer line or pipe located between: (1) two manholes/maintenance holes; (2) a pump station and a manhole/maintenance hole; (3) a pump station or a manhole/maintenance hole and a headworks structure; or (4) a sewer line or pipe otherwise identifiable as a discrete section.

o.    "SSMP" means the Sewer System Management Plan developed and implemented by SASD for the Collection System in accordance with the SSO WDR.

p.    "Collection System" means the sewer pipes and lines, manholes or maintenance holes, pump stations, and all appurtenances thereto under ownership of and/or operation by SASD that are used to convey wastewater generated by residential, commercial, and industrial sources within unincorporated areas of the County of Sacramento and the cities of Sacramento, Elk Grove, Rancho Cordova, Folsom and Citrus Heights to the sewage collection system owned and operated by the Sacramento Regional County Sanitation District ("SRCSD"), where it is subsequently delivered to the Sacramento Regional Wastewater Treatment Plant.  For purposes of this Consent Decree, the Collection System does not include Private Laterals or other privately owned or operated infrastructure that connects to the Collection System.

### III.    JURISDICTION AND VENUE

3.    For purposes of settlement, the Settling Parties stipulate to the Court's jurisdiction to enter this Consent Decree.

### IV.    EFFECT OF CONSENT DECREE

4.    Plaintiff does not, by their agreement to this Consent Decree, warrant or aver in any

manner that the Defendants' compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation.  Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of the Defendants to comply with all applicable Federal, State and local laws and regulations governing any activity required by this Consent Decree.

5.    Nothing in the Consent Decree shall be construed as an admission by Defendants, and does not intend to imply any admission as to any fact, finding, issue of law, or violation of law, nor shall compliance with this Consent Decree be construed as an admission by Defendants of any fact, finding, conclusion, issue of law, or violation of law.

## V.    APPLICABILITY

6.    The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns.

7.    The Settling Parties agree not to contest the validity of this Consent Decree in any subsequent proceeding to implement or enforce its terms.  By entering into this Consent Decree Defendants do not admit liability for any purposes as to any allegation or matter arising out of the Notice Letter and/or Complaint.

8.    No change in ownership or corporate or other legal status of the Defendants or any transfer of the Defendants' assets or liabilities shall in any way alter the responsibilities of the Defendants or any of its successors or assigns thereof, under this Consent Decree.  In any action to enforce this Consent Decree, the Defendants shall not raise as a defense the failure by any of its agents, servants, contractors, employees, and successors or assigns to take actions necessary to comply with this Consent Decree.

## VI.    EFFECTIVE DATE AND TERMINATION DATE

9.    The term "Effective Date," as used in this Consent Decree, shall mean the last date on which the signature of a party to this Consent Decree is executed.

10.    This Consent Decree will terminate no more than  six (6) years and six (6) months from the Effective Date. If any Settling Party has invoked the dispute resolution process pursuant to Section XX and the dispute has not been resolved at the time the Consent Decree would otherwise terminate, the Consent Decree shall continue in effect until the dispute is resolved, either through

mutual agreement of the Settling Parties or by the Court.

## VII.    SSO AND SPILL REDUCTION PERFORMANCE STANDARDS

11.      SSO Reduction.  It is the goal of this Consent Decree to reduce SSOs from the

Collection System.  SASD shall reduce SSOs from sewer mains and Lower Laterals as provided in

Table 1. Table 1 sets forth the number of SSOs per 100 miles of sewer per year ("SSO Reduction

Performance Standard"), which Defendants shall not exceed in a particular calendar year.

**Table 1 – SSO Reduction Performance Standards**

| Year | Maximum Number of SSOs Per 100 Miles of Sewer / Year |
|------|------------------------------------------------------|
| 2012 | 20 |
| 2013 | 15 |
| 2014 | 10 |
| 2015 | 8 |
| 2016 | 6 |
| 2017 | 5 |

12.      For purposes of determining compliance with the SSO Reduction Performance

Standards, SSOs (a) of thirty-five (35) gallons or less and (b) that does not reach a drain inlet, storm

drain main, pipe, manhole, pumping station or surface water body will not be counted.  SSOs

entering the MS4 or entering a paved surface of the public right of way adjacent to the MS4 when it

is raining are not eligible for this exception. Field reports shall document weather conditions at the

time of response to the SSO event.

13.      Compliance with SSO Reduction Performance Standards shall be determined using

the miles of sewer (gravity mains, force mains, and Lower Laterals) reported by SASD in each year's

Annual Report required under Section XV of this Consent Decree.

14.      Failure to meet the SSO Reduction Performance Standard in any particular calendar

year shall be a violation of this Consent Decree.

## VIII.   SSO REDUCTION ACTION PLAN

15.      SASD shall report any failure to meet the applicable SSO Reduction Performance

Standard in each Annual Report required under Section XV of this Consent Decree.  In the event

SASD fails to meet the applicable SSO Reduction Performance Standard for any particular calendar

year (as set forth in Table 1), SASD shall prepare an SSO Reduction Action Plan and submit it to CSPA concurrently with SASD's Annual Report. An SSO Reduction Action Plan prepared pursuant to this Section shall specify the actions taken in the calendar year for which the Annual Report was submitted that were designed to achieve compliance with the SSO Reduction Performance Standards, and shall specify additional measures to be taken during the current calendar year and/or thereafter to achieve compliance with the SSO Reduction Performance Standards.  SASD shall identify how each measure to be taken in the current calendar year is anticipated to achieve compliance with the applicable SSO Reduction Performance Standard, and shall identify how the proposed additional measures modify the SSMP.  SASD may include any or all elements in the SSO Reduction Action Plan in the SSMP for the Collection System.  The SSO Reduction Action Plan shall include a proposed schedule for implementation of all actions proposed.

16.	CSPA shall provide the Defendants, in writing, with all recommended revisions to the SSO Reduction Action Plan within sixty (60) Days of receipt of such SSO Reduction Action Plan. SASD shall consider each of CSPA's recommended revisions and indicate within sixty (60) Days of receipt whether SASD accepts each such recommended revision.  For each recommended revision not accepted, if any, SASD shall provide a written explanation for its refusal to accept said revision. SASD shall implement all agreed upon provisions and/or revisions of the SSO Reduction Action Plan.  If the SASD does not accept each and all of CSPA's recommendations, then CSPA may seek dispute resolution pursuant to Section XX of this Consent Decree.  In the event Defendants fail to achieve the SSO Reduction Performance Standard more than once during the life of the Consent Decree, in any subsequent dispute resolution process, the Defendants shall have the burden of demonstrating that the elements or actions set forth in the SSO Reduction Action Plan are designed and anticipated to achieve compliance with the SSO Reduction Performance Standards set forth in Table 1 of this Consent Decree.

17.	SASD shall begin implementation of the agreed upon portions of any SSO Reduction Action Plan as an enforceable requirement of this Consent Decree as soon as possible but not more than thirty (30) Days following agreement or upon the schedule set forth therein.

18.	SASD shall begin implementation of any disputed portions of any SSO Reduction

Action Plan as an enforceable requirement of this Consent Decree as soon as possible but not more than thirty (30) Days following resolution of any dispute resolution process related to those disputed portions of such SSO Reduction Action Plan.

## IX.    SSO INVESTIGATION, RESPONSE AND REPORTING

19.    Within ninety (90) Days of the Effective Date, SASD shall maintain its SSO Sanitary Sewer Overflow Response Procedures to include:

a.    A training program for all personnel that emphasizes the importance of accurately recording the time SASD is notified of a SSO; the time of arrival of the operator; the time the SSO is stopped; the accurate reporting of those times, including in CIWQS. Defendants shall complete training of all crews in accordance with the terms of this paragraph as soon as possible but not more than one hundred and eighty (180) Days of the Effective Date.

b.    A requirement to record, if roots are identified as the cause of any SSO, whether the roots causing the SSO entered the Sacramento Collection System from a Private Lateral. If it is difficult to detect whether the roots causing the blockage enter from the upper or lower lateral, SASD generally assumes that the obstruction is SASD responsibility.  In cases where it is determined that the blockage comes from the private lateral, SASD shall use its enforcement authority to require the property owner to correct the problem;

c.    A requirement to record internally and to report to CIWQS all locations impacted by a SSO separately, such that every location impacted (e.g., building, street, storm drain) is clearly and consistently identified;

20.    In the Annual Report required under Section XV, SASD shall provide information describing any significant changes made to the SSO investigation, response and reporting procedures during the previous calendar year.

## X.    SEWER INSPECTION AND CONDITION ASSESSMENT

21.    Beginning with the Effective Date of the Consent Decree SASD shall implement its condition assessment, rehabilitation, and replacement activities in a manner designed to reduce SSOs as necessary to achieve the SSO Reduction Performance Standards set forth in Table 1.

22.    At a minimum, SASD shall conduct a Condition Assessment of 230,000 feet of main

1  line pipes in the SASD Collection System annually.

2       23.     SASD shall revise its Quality Control for Sewer Pipe Cleaning Procedure/Policy for

3  main line pipe cleaning such that the the Quality Control for Sewer Pipe Cleaning Procedure/Policy

4  requires spot checking the cleaning quality in a minimum of three (3) percent by Sewer Segment of

5  the cleaned sewers on a monthly basis using CCTV to ensure adequate cleaning.  If the cleaning is

6  found to be inadequate, the Sewer Segment will be re-cleaned, and then CCTV'd and the cleaning

7  assesed, within thirty (30) days.  If the re-cleaning is found to be inadequate, the identified crew

8  leader and his/her crew will be re-trained within thirty (30) Days.   Re-training of crew leader or

9  member is not required in instances where that individual is re-assigned to a different activity.  The

10  Quality Control for Sewer Pipe Cleaning Procedure/Policy document, as well as subsequent revisions

11  and modifications, will be incorporated into the SASD SSMP. During the life of the Consent Decree,

12  a CCTV inspection perfomed under this program that results in a Condition Assessment may count

13  toward the condition assessment required in paragraph 22 above.

14       24.     SASD shall implement its Visual Flow Inspection Program. The program document,

15  as well as subsequent revisions and modifications, will be incorporated into the SASD SSMP.  At a

16  minimum, the program will inspect the flow characteristics of ninety (90) percent of the active main

17  lines in the Collection System that are not cleaned or CCTV inspected in the current year.

18       25.     SASD shall modify its existing TVI Policy and/or Lower Lateral Stoppage Failure

19  Mode Strategy as necessary to require that a lower lateral CCTV inspection be performed under the

20  following conditions.

21            a.     Within thirty (30) Days of any SSO caused by a blockage in the SASD lower

22  lateral.

23            b.     Within ninety (90) Days of a second blockage (where no SSO has occurred) in

24  any twelve (12) month period.

25       26.     Maintenance and structural defects observed in Lower Laterals shall be evaluated by

26  the most current version of the Lower Lateral Repair-Maintain-Replace Decision Policy in the SASD

27  SSMP and any required action, including CCTV inspections of Lower Laterals, shall be taken in

28  accordance with that policy.

27.     Structural defects observed in main lines shall be evaluated by the most current version of the Main Line Cracked, Broken, Missing, and Collapsed Pipe Decision Policy in SASD's SSMP and any required action, including CCTV inspections of main lines, shall be taken in accordance with that policy.

28.     In the Annual Report required under Section XV, SASD shall provide information describing any significant changes made to the condition assessment, and rehabilitation replacement program during the previous calendar year.

## XI.     FATS, OILS AND GREASE PROGRAM

29.     Beginning with the Effective Date of the Consent Decree SASD shall implement its FOG Program in a manner designed to reduce SSOs caused by FOG as necessary to achieve the SSO Reduction Performance Standards set forth in Table 1.  The Program document, as well as subsequent revisions and modifications shall be incorporated into the SASD SSMP.

30.     In the Annual Report required under Section XV, SASD shall provide information describing any significant changes made to its FOG Program in the preceding calendar year.

## XII.    MAIN LINE SEWER AND LOWER LATERAL CLEANING PROGRAMS

31.     Beginning with the Effective Date of the Consent Decree SASD shall implement its main line sewer cleaning and lower lateral cleaning programs in a manner designed to reduce SSOs as necessary to achieve the SSO Reduction Performance Standards set forth in Table 1.

32.     SASD shall clean all 8" and smaller diameter main line pipes in the Collection System at least once within six (6) years of the Effective Date.  At a minimum, cleaning shall be performed on at least Three Million Five Hundred Thousand (3,500,000) feet of main line pipes in the Collection System annually.

33.     SASD shall implement its Main Line Stoppage Failure Mode Strategy for main line pipe cleaning.  The program document, as well as subsequent revisions and modifications, will be incorporated into the SASD SSMP. SASD shall follow a standardized methodology for collecting and recording observations made regarding the extent and nature of materials removed during the main line cleaning process.  The observations shall be recorded in a database or computerized maintenance management system.

34.     SASD shall modify its Main Line Stoppage Failure Mode Strategy and its Incorrect Cleaning Failure Mode Strategy to make them consistent with each other and the requirements of this Consent Decree.

35.     SASD shall determine whether to maintain, increase, or decrease the frequency of hot spot cleaning for a main line segment based on the cleaning observations following the criteria set forth in its Incorrect Cleaning Failure Mode Strategy.  The strategy document, as well as subsequent revisions and modifications, will be incorporated into the SASD SSMP.

36.     At a minimum, 4,000 lower lateral pipe segments in the Collection System will be cleaned, renewed, or replaced annually.

37.   In the Annual Report required under Section XV, SASD shall provide information describing any significant changes made to the cleaning programs in the last calendar year.

## XIII.   CHEMICAL ROOT CONTROL PROGRAM

38.     SASD shall continue to assess their chemical root control program, currently a pilot program, as a methodology to supplement main line hot spot and routine cleaning.

39.     In the Annual Report required under Section XV, SASD shall provide information describing any significant changes made to its Chemical Root Control Program in the preceding calendar year.

## XIV.   ORDINANCE ENFORCEMENT

40.     Beginning with the Effective Date of the Consent Decree SASD shall enforce its existing ordinance in a manner designed to reduce SSOs as necessary to achieve the SSO Reduction Performance Standards set forth in Table 1.

41.     Within ninety (90) Days of the Effective Date, the District Engineer shall propose and recommend to the SASD Board of Directors the adoption of legislation that would require a homeowner to inspect the Private Lateral and make all necessary repairs within one hundred and twenty (120) Days where the Defendants determine that a SSO was caused by roots or debris entering the Lower Lateral or main line as a result of defects in the Private Lateral. All enforcement by SASD in each calendar year shall be summarized in the applicable Annual Report.  Supporting documentation shall be provided as an appendix to the Annual Report.

## XV.    ANNUAL REPORT ON COLLECTION SYSTEM

42.    Within ninety (90) Days after the end of each calendar year that this Consent Decree remains in effect, SASD shall submit an Annual Report to CSPA.  The Annual Report shall provide information required by this Consent Decree, and the following details relevant to SASD's compliance with this Consent Decree during the preceding calendar year, including:

a.   A statement and explanation of SASD's compliance or non-compliance with the SSO Reduction Performance Standard for the previous calendar year;

b.   Any program modifications or delays during the previous calendar year;

c.   A statement of:

i.        the miles of mainline sewer pipes and the number of Lower Laterals that were assessed in the previous calendar year;

ii.       a summary of the mileage of sewers and number of Lower Laterals repaired, rehabilitated and/or replaced during the previous calendar year.

d.   Total mileage of mainline sewer pipes and the number of Lower Laterals cleaned in the previous calendar year.

## XVI.   MUNICIPAL SEPARATE STORM SEWER MONITORING PROGRAM

43.    Defendants shall implement their current monitoring of SSOs that discharge to the MS4, which includes the requirements to record whether an SSO reaches the MS4, determine whether the SSO is subsequently discharged from the MS4, determine the final destination of the SSO (including whether it discharges to waters of the United States), and sample and analyze the discharge and the receiving water as necessary.

## XVII.  MUNICIPAL SEPARATE STORM SEWER ORDINANCE ENFORCEMENT POLICY

44.    Beginning with the Effective Date of the Consent Decree, the County shall maintain and enforce any existing ordinance designed to reduce SSOs and/or assure the SSOs are cleaned up.

## XVIII. PAYMENT OF LITIGATION COSTS, MONITORING OF CONSENT DECREE COMPLIANCE, AND MITIGATION PAYMENT

45.    Litigation Fees and Costs. To help defray CSPA's attorneys, consultant, and expert fees and costs, and any other costs incurred as a result of investigating, filing this action, and negotiating a settlement, Defendants shall pay Plaintiff the sum of Two Hundred Fifty Thousand

Dollars ($250,000.00) which shall include all attorneys' fees and costs for all services performed by and on behalf of CSPA by its attorneys and consultants up to and through the Effective Date of this Consent Decree.  The payment shall be made on or before February 20, 2012 of this Consent Decree. The payment shall be made in the form of a check payable to "*Lawyers for Clean Water Attorney Client Trust Account*" addressed to:  1004-A O'Reilly Avenue, San Francisco, California 94129, sent overnight delivery, and shall constitute full payment for all costs of litigation incurred by CSPA that have or could have been claimed in connection with or arising out of CSPA's lawsuit, up to and including the Effective Date.

46.   Compliance Monitoring.  To compensate Plaintiff for time to be spent by legal staff or technical consultants reviewing compliance reports and monitoring Defendants' compliance with the terms of this Consent Decree, Defendants shall pay Sixty Thousand Dollars ($60,000.00).  The payment shall be made on or before February 20, 2012 of this Consent Decree.  The payment shall be made in the form of a check payable to "*Lawyers for Clean Water Attorney Client Trust Account*" addressed to:  1004 O'Reilly Avenue, San Francisco, California 94129, sent overnight delivery

47.   Mitigation Payment.  To remediate perceived environmental harms resulting from the allegations in the Complaint, Defendants shall pay to the Rose Foundation for Communities and the Environment the total sum of Three Hundred Fifty Thousand Dollars ($350,000.00) ("the Mitigation Payment") to be used to fund environmental project activities that will benefit the Sacramento-San Joaquin River Delta and its watershed.  The Mitigation Payment shall be made within sixty (60) Days of the Effective Date of this Consent Decree, and sent to:

> The Rose Foundation for Communities and the Environment
> 6008 College Avenue, Suite 10
> Oakland, California 94618
> Attention: Tim Little

### XIX.   SUBMISSION OF CONSENT DECREE FOR AGENCY REVIEW

48.   CSPA shall submit a copy of this Consent Decree to EPA and the United States Department of Justice ("DOJ") within three (3) Days of its execution for agency review consistent with 40 C.F.R. § 135.5.

49.   In the event that EPA or DOJ comment negatively on the provisions of this Consent

Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by EPA or DOJ.

## XX.    BREACH OF CONSENT DECREE AND DISPUTE RESOLUTION PROCEDURES

50.    <u>Force Majeure</u>.  Defendant(s) shall notify CSPA pursuant to the terms of this paragraph, when implementation of the requirements set forth in this Consent Decree, within the deadlines set forth in those paragraphs, becomes impossible, despite the timely good-faith efforts of Defendant(s), due to circumstances beyond the control of Defendant(s)or its agents, and which could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendant(s). Any delays due to Defendant(s)' failure to make timely and bona fide applications and to exercise diligent efforts to comply with the terms in this Consent Decree in normal inclement weather shall not, in any event, be considered to be circumstances beyond Defendant(s)' control. Financial inability shall not, in any event, be considered to be circumstances beyond Defendant(s)' control.

a.  If Defendant(s) claims impossibility, it shall notify CSPA in writing within thirty (30) Days of the date that Defendant(s) first knew of the event or circumstance that caused or would cause a violation of this Consent Decree, or the date Defendant(s) should have known of the event or circumstance by the exercise of due diligence.  The notice shall describe the reason for the nonperformance and specifically refer to this Section of this Consent Decree.  It shall describe the anticipated length of time the delay may persist, the cause or causes of the delay, the measures taken or to be taken by Defendant(s) to prevent or minimize the delay, the schedule by which the measures will be implemented, and the anticipated date of compliance. Defendant(s) shall adopt all reasonable measures to avoid and minimize such delays.

b.  The Settling Parties shall meet and confer in good-faith concerning the non-performance and, where the Settling Parties concur that performance was or is impossible, despite the timely good faith efforts of Defendant(s) and due to circumstances beyond the control of Defendant(s) that could not have been reasonably foreseen and prevented by the exercise of due diligence by Defendant(s), new performance deadlines shall be established.

c.  If CSPA disagrees with Defendant(s)' notice, or in the event that the Settling Parties cannot timely agree on the terms of new performance deadlines or requirements, either Settling Party

1    shall have the right to invoke the Dispute Resolution Procedures pursuant to paragraphs 52 and 53 of

2    this Consent Decree.  In such proceeding, Defendant(s) shall bear the burden of proving that any

3    delay in performance of any requirement of this Consent Decree was caused or will be caused by

4    force majeure and the extent of any delay attributable to such circumstances.

5         51.    The Settling Parties agree that any action or proceeding which is brought by any

6    Settling Party against any other Settling Party pertaining to, arising out of or related to the

7    requirements of this Consent Decree shall first use the Informal Dispute Resolution meet and confer

8    proceedings set forth in the preceding paragraph and, if not successful, the Settling Parties shall use

9    the Formal Dispute Resolution procedures in this paragraph.  The Dispute Resolution Procedures set

10   forth in paragraphs 52 and 53 shall be the exclusive mechanism for resolving disputes between the

11   Settling Parties with regard to any aspect of this Consent Decree.

12        52.    <u>Informal Dispute Resolution</u>.  The Settling Parties agree to engage in Informal Dispute

13   Resolution pursuant to the terms of this paragraph:

14             a.   If a dispute under this Consent Decree arises, or any Settling Party believes that a

15   breach of this Consent Decree has occurred, the Settling Parties shall meet and confer (telephonically

16   or in-person) within ten (10) Days of receiving written notification of a request for such meeting.

17   During the meet and confer proceeding, the Settling Parties shall discuss the dispute and make best

18   efforts to devise a mutually acceptable plan, including implementation dates, to resolve the dispute.

19   The Settling Parties may, upon mutual written agreement, extend the time to conduct the meet and

20   confer discussions beyond ten (10) Days.

21             b.   If any Settling Party fails to meet and confer within the timeframes set forth in

22   paragraph 52(a), or the meet and confer does not resolve the dispute, after at least ten (10) Days have

23   passed after the meet and confer occurred or should have occurred, either Settling Party shall be

24   entitled to initiate the Formal Dispute Resolution procedures outlined in paragraph 53 below.

25        53.    <u>Formal Dispute Resolution</u>. The Settling Parties agree that Formal Dispute Resolution

26   shall be initiated by filing a Motion to Show Cause or other appropriately titled motion ("Motion") in

27   the United States District Court, Eastern District of California, before the Honorable Judge Kimberly

28   J. Mueller, or the District Court judge otherwise assigned to his matter at that time, to determine

1  whether either party is in breach of this Consent Decree and, if so, to require the breaching party to

2  remedy any breach identified by the District Court.  The Settling Parties agree to stipulate to an

3  expedited review of the Motion by the Court if requested by any Settling Party.  If Kimberly J.

4  Mueller is not available to perform the role identified herein, the Settling Parties agree that the

5  Motion shall be re-assigned pursuant to applicable rules of the District Court.

6        54.     Litigation costs and fees incurred in resolving any dispute, including an alleged breach

7  of this Consent Decree, shall be awarded in accord with the standard established by section 505 of the

8  Clean Water Act, 33 U.S.C. § 1365, and case law interpreting that standard.

9  **XXI.   STIPULATED PAYMENTS**

10        55.     <u>Penalties for Failure to Submit Reports as Required</u>:  Defendants agree to pay

11  stipulated payments in the event reports required by this Consent Decree are not timely submitted

12  and/or do not contain the information required by this Consent Decree.  CSPA is not obligated to

13  notify the Defendants, however it may do so in order to allow the Defendants to promptly address

14  any alleged deficiency after any submission date has been missed.

15        56.     The Defendants shall pay the following stipulated payments in the event that they file

16  a late or incomplete report covered herein after the grace period:

17          a.     For a report submitted after the grace period, the Defendants shall pay One

18  Hundred Dollars ($100.00) per Day until the report is submitted, up to thirty (30) Days for a total

19  amount of $3,000.00.

20          b.     For any report more than thirty (30) Days late, the Defendants shall pay Five

21  Thousand Dollars ($5,000.00).

22          c.     For any report more than ninety (90) Days late, the Defendants shall pay Seven

23  Thousand Dollars ($7,000.00).

24          d.     The above payments are cumulative, as applicable, to a maximum penalty of

25  Fifteen Thousand Dollars ($15,000.00) per report.

26        57.     In the case of a late report, the Defendants shall send CSPA the report per

27  Section XXII of this Consent Decree.  CSPA shall notify the Defendant(s) of receipt of the late report

28  and shall include an invoice for the amount of the stipulated payment, if any, due and payable.  The

1   Defendant(s) shall contact CSPA within ten (10) working days if the Defendant(s) disagrees with

2   CSPA's stipulated payment calculation and may meet and confer with CSPA or seek dispute

3   resolution pursuant to Section XX of this Consent Decree.  The Defendant(s) shall pay any stipulated

4   payments due pursuant to this Consent Decree within thirty (30) Days after receipt of CSPA's invoice

5   itemizing the stipulated payment liability, or thirty (30) Days after resolution of a dispute if the

6   dispute resolution process has been invoked pursuant to Section XX of this Consent Decree.

7          58.     All payments of stipulated payments described in this Consent Decree shall be paid by

8   the Defendants to the Rose Foundation for Communities and the Environment and sent via overnight

9   mail to: Rose Foundation for Communities and the Environment, 6008 College Avenue, Oakland,

10  California 94618, Attention: Tim Little.

11         59.     Nothing in this Consent Decree shall prevent CSPA from waiving any stipulated

12  payments, which might be due under this Section, based on the outcome of the Informal Dispute

13  Resolution process, or based on the Defendants' good faith efforts.

14                          **XXII.  NOTICES AND SUBMISSIONS**

15         60.     Defendants agree to provide Plaintiff with all documents or reports required by this

16  Consent Decree.  All documents shall be directed to the following individuals at the addresses

17  specified below unless specifically stated otherwise herein.  Any change in the individuals or

18  addresses designated by any party must be made in writing to all Settling Parties.

19                  If to CSPA:

20
21          Drevet Hunt
            Lawyers for Clean Water, Inc.
22          1004-A O'Reilly Avenue
            San Francisco, California 94129
23          Telephone: (415) 440-6520
            Email: drev@lawyersforcleanwater.com
24
25          California Sportfishing Protection Alliance
            Bill Jennings, Executive Director
26          3536 Rainier Avenue
            Stockton, California 95204
27          Telephone: 209-464-5067
            Fax: 209-464-1028
28          Email: deltakeep@me.com

<u>If to the Defendants</u>:

Kanwarjit S. Dua
Somach Simmons & Dunn, LLP
500 Capitol Mall, Suite 1000
Sacramento, California 95814
Telephone: (916) 446-7979
Fax: (916) 446-8199
Email: kdua@somachlaw.com

Lisa A. Travis
County of Sacramento
Office of the County Counsel
700 H Street, Ste. 2650
Sacramento, California 95814
Telephone: (916) 874-5557
Fax: (916) 874-8207
Email: travisl@saccounty.net

61.    Defendants also agree to make available to CSPA any existing documents within the Defendants' custody or control that are reasonably necessary to evaluate system performance and/or compliance with this Consent Decree within  sixty (60) Days of written request by CSPA.

62.    During the life of this Consent Decree, Defendants shall preserve at least one legible copy of all records and documents, including computer-stored information, which relate to performance of its obligations under this Consent Decree.

63.    Any notice, report, certification, data presentation or other document submitted by Defendants to CSPA pursuant to this Consent Decree, which discusses, describes, demonstrates, or supports any finding or makes any representation concerning compliance or non-compliance with any requirement(s) of this Consent Decree, shall contain the following certification, signed and dated by a responsible official:

I certify, under penalty of perjury, that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted and is, to the best of my knowledge and belief, true, accurate and complete.

## XXIII. MUTUAL RELEASE OF LIABILITY

64.    Upon the District Court's approval and entry of this Consent Decree, the Settling Parties and their successors, assigns, directors, officers, agents, attorneys, representatives, and

employees, releases all persons, including the Defendants and their respective officers, council

members, employees, agents, attorneys, representatives, contractors, predecessors, successors and

assigns, past and present, from, and waives all claims, for injunctive relief, damages, penalties, fines,

sanctions, mitigation, fees (including fees of attorneys, experts, and others), costs, expenses or any

other sum incurred or claimed in this action, up to the Effective Date of this Consent Decree.  This

release includes a release, and covenant not to sue, for any claims of injunctive relief, damage,

penalties, fines, sanctions, mitigation, fees (including fees of attorneys, experts and others), costs,

expenses or any other sum incurred or claimed based on facts or allegations set forth in the Notice

Letter and/or Complaint up to the Effective Date of this Consent Decree.

65.     Nothing in this Consent Decree limits or otherwise affects CSPA's right to address or

take any position that it deems necessary or appropriate in any formal or informal proceeding before

any judicial or administrative body on any other matter relating to Defendants.

### XXIV. GENERAL PROVISIONS

66.     <u>Continuing Jurisdiction</u>.  The Settling Parties stipulate that the District Court shall

retain jurisdiction to enforce the terms and conditions of this Consent Decree and to resolve disputes

arising hereunder as may be necessary or appropriate for the construction or execution of this

Consent Decree up to and including the Termination Date in paragraph 10.

67.     <u>Construction</u>.  The language in all parts of this Consent Decree shall be construed

according to its plain and ordinary meaning, except as to those terms defined in Section II above.

68.     <u>Choice of Law</u>.  The laws of the United States shall govern this Consent Decree.

69.     <u>Severability</u>.  In the event that any provision, paragraph, section, or sentence of this

Consent Decree is held by a Court to be unenforceable, the validity of the enforceable provisions

shall not be adversely affected.

70.     <u>Counterparts</u>.  This Consent Decree may be executed in any number of counterparts,

all of which together shall constitute one original document.  Telecopy, scanned copies (i.e., pdf)

and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of

this Consent Decree.

71.     <u>Modification of the Consent Decree</u>.  This Consent Decree, and any provisions herein,

1    may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the

2    Settling Parties.

3        72.    Full Settlement.  This Consent Decree constitutes a full and final settlement of this

4    matter.

5        73.    Integration Clause.  This is an integrated Consent Decree.  This Consent Decree is

6    intended to be a full and complete statement of the terms of the agreement between the Settling

7    Parties and expressly supersedes any and all prior oral or written agreements, covenants,

8    representations, and warranties (express or implied) concerning the subject matter of this Consent

9    Decree.

10       74.    Authority.  The undersigned representatives for CSPA and the Defendants each certify

11   that he/she is fully authorized by the Settling Party whom he/she represents to enter into the terms

12   and conditions of this Consent Decree.

13   //

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24   //

25   //

26   //

27   //

28   //

1        The Settling Parties hereby enter into this Consent Decree.

2                                                  COUNTY OF SACRAMENTO

3    Date: 1/17/12                                  /s/ Michael L. Peterson (original signature retained
4                                                   by attorney Kanwarjit S. Dua)
                                                    By: Michael L. Peterson
5
6                                                  SACRAMENTO AND SACRAMENTO AREA
                                                   SEWER DISTRICT
7
     Date: 1/13/12                                  /s/ Stanley R. Dean (original signature retained
8                                                   by attorney Kanwarjit S. Dua)
                                                    By: Stanley R. Dean
9
10                                                 CALIFORNIA SPORTFISHING PROTECTION
                                                   ALLIANCE
11
     Date: 1/9/12                                   /s/ Bill Jennings (original signature retained by
12                                                  attorney Drevet Hunt)
                                                    By: BILL JENNINGS
13
14   APPROVED AS TO FORM:                          For DEFENDANTS COUNTY OF
                                                   SACRAMENTO AND SACRAMENTO AREA
15                                                 SEWER DISTRICT:

16                                                 SOMACH SIMMONS & DUNN, PC
17
     Date: 1/17/12                                  /s/ Kanwarjit S. Dua (as authorized on 1/17/12)
18                                                  By: KANWARJIT S. DUA

19                                                 For PLAINTIFF CALIFORNIA SPORTFISHING
20                                                 PROTECTION ALLIANCE:

21                                                 LAWYERS FOR CLEAN WATER INC.
22
     Date: 1/18/12                                  /s/ Layne Friedrich (as authorized on 1/18/12)
23                                                  By: LAYNE FRIEDRICH

24

25

26

27

28

Consent Decree                              21                        CV 11-00575-KJM-EFB

1

## <u>ORDER</u>

2       IT IS HEREBY ORDERED that the above captioned action against all parties is dismissed

3   with prejudice.

4       IT IS FURTHER ORDERED that, through the Termination Date specified in paragraph 10 of

5   the Consent Decree, the Court shall retain jurisdiction over CSPA's claims against Defendants for the

6   sole purpose of enforcing compliance by the Settling Parties with the terms of the Consent Decree;

7       IT IS SO ORDERED.

8   Date:  March 9, 2012.

9

10                                        _____

                                          UNITED STATES DISTRICT JUDGE

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28